UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEO DION WASHINGTON, | ) |
| Plaintiff, | ) Case No. 17-cv-9054 |
| v. | ) Hon. Steven C. Seeger |
| DENIS MCDONOUGH, Secretary, United States Department of Veterans Affairs, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Defendant Denis McDonough, the Secretary of the United States Department of Veterans Affairs, has moved for summary judgment on Plaintiff Leo Dion Washington's employment discrimination claims. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 88). Washington filed no response. For the reasons that follow, the Court grants Defendant's motion.

### Background

Plaintiff Washington filed this employment discrimination lawsuit in 2017 against the Secretary of the Department of Veterans Affairs, often called the "VA." He amended his complaint multiple times. Most recently, in his fourth amended complaint, Washington alleged that the VA discriminated against him based on his race and disability, and retaliated against him too. *See* Fourth Am. Cplt. (Dckt. No. 63).

Washington's fourth amended complaint, which he filed *pro se*, is only a few pages long and does not follow a typical structure. *Id.* Washington did not include numbered allegations. The fourth amended complaint appears to include four claims, and each one a narrative paragraph or two about a different underlying incident.

That approach may be a bit unconventional, but the Federal Rules are forgiving when it comes to the form of a pleading (especially for *pro se* litigants). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," plus a jurisdictional statement and a demand for relief. *See* Fed. R. Civ. 8(a). "No technical form is required." *See* Fed. R. Civ. P. 8(d)(1). It suffices if each allegation is "simple, concise, and direct." *Id.* And Washington cleared that hurdle.

The fourth amended complaint begins with a "Background" section that explains why he was filing an amended complaint, and then includes a section titled "Basis for Jurisdiction and Venue." *See* Fourth Am. Cplt., at 1 (Dckt. No. 63). That section cites to several statutes: (1) Title VII; (2) 42 U.S.C. § 1981; (3) the ADEA;[1] and (4) the Rehabilitation Act.

The fourth amended complaint then includes a section entitled "Claim and Bases," which provides an overview of the claims that follow. *Id.* "Complainant was subjected to a hostile work environment based on race (African American), disability,[2] and reprisal (prior EEO activity) as evidenced by the following events." *Id.*

After that summary, the fourth amended complaint discusses four separate events that occurred between July 2014 and October 2014. *Id.* at 2–3. They begin with "Claim 1," "Claim 2," and so on. The Court does not read these paragraphs as four separate counts, because some paragraphs seem to allege several different types of discrimination under different statutes. Therefore, a paragraph that describes one event may give rise to more than one causes of action.

---

[1] Washington did not mention his age or any instance of age discrimination in the fourth amended complaint. *See generally* Fourth Am. Cplt. (Dckt. No. 63). And in the summary of his allegations, he did not refer to age discrimination. *Id.* at 1. So despite listing the ADEA in the jurisdictional section, it appears that Washington did not bring a claim under that statute.

[2] Washington did not explain the nature of his disability in the complaint, but the VA's summary of his case stated that his "claimed disability is dysthymia (depressive disorder)." *See* Final Agency Decision (Dckt. No. 90-1, at 7 of 478).

In Claim 1, Washington alleged that he requested time off in mid-July 2014 to prepare for an interview with an Equal Employment Opportunity ("EEO") investigator. *See* Fourth Am. Cplt., at 2 (Dckt. No. 63) (alleging that the VA denied his request on July 15 to take time off on July 16 to prepare for an interview on July 17). He apparently wanted time off during training of some kind, and it was "questionable as to whether the training was mandatory." *Id.* He did not view the request as a "bi[g] deal" because he "pretty much knew the gist of the training." *Id.* But "he was denied the official time off by Ms. Stroder [apparently a manager, somewhere in the chain of command] due to his race and involvement in EEO/Whistleblower activities." *Id.*

In Claim 2, Washington alleged that he "was harassed on August 14, 2014 by Ms. Stroder regarding a meeting," and was subjected to harassment "even though he called in requesting sick leave." *Id.* Apparently, Ms. Stroder was "constantly nagging him" for a meeting, "week after week," from July 2014 to September 2014. *Id.* She was "forcing this meeting without him having representation," and was "harassing him about having the meeting." *Id.* When the meeting finally happened in September 2014, "it was not a disciplinary meeting; it was a meeting to harass him." *Id.* The complaint provided no additional details about the meeting. *Id.*

In Claim 3, Washington alleged that management "harassed" him by "altering his telework and compressed work schedule" on September 14, 2014. *Id.* At the time, Washington only needed to come into the office one day each week. *Id.* at 3. But his manager changed the day that he was supposed to come into the office from Wednesday to Monday or Friday. *Id.* The allegation is not easy to understand, but his manager ("Ms. Stroder") apparently responded differently to his schedule than his supervisor ("Ms. Szrom"). *Id.* Stroder's actions were "her way to retaliate against him" "because of his race, disability, and reprisal." *Id.*

In Claim 4, Washington alleged that management "harassed him over his reasonable accommodation" on October 14, 2014. *Id.* The fourth amended complaint does not reveal what the "reasonable accommodation" was, but apparently it involved Washington's work schedule. According to Washington, his manager (Stroder) requested "confusing" changes to his "reasonable accommodation," because Washington "does not know if she wants him to be in on Mondays, Wednesdays, or Fridays." *Id.* She "wanted to make changes to his reasonable accommodation under the guise of harassment" and she did so "due to his race, disability and reprisal." *Id.*

**Legal Standard**

Rule 56 provides that the Court "shall grant" summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotation marks omitted).

The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate

if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.,* 477 U.S. at 322–23; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

Summary judgment is the time for a party to put its evidentiary cards on the table. "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

**Discussion**

Defendant moved for summary judgment on all claims. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 88). Defendant properly supported his motion with a Rule 56.1 statement of material facts, backed by admissible evidence. *See* Def.'s Corrected Statement of Facts (Dckt. No. 96).[3]

Washington did not respond to the motion for summary judgment, or to Defendant's statement of facts. The non-response means that Defendant's facts are deemed admitted. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion. We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.") (citations omitted); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) ("Because Keeton failed to file a

---

[3] Defendant's initial Rule 56 Statement of Facts appeared to contain a formatting mistake, and this Court requested clarification to make sure that no text was inadvertently omitted. *See* Dckt. No. 94. Defendant filed a Corrected Rule 56 Statement, which fixed the formatting but did not add or change any of the text. *See* Def.'s Corrected Statement of Facts (Dckt. No. 96); *see also* Def.'s Statement Concerning Local Rule 56.1 Statement (Dckt. No. 95). So the Court cites to the corrected version.

response to Morningstar's Local Rule 56.1 statement of facts in the district court, we credit Morningstar's uncontroverted version of the facts to the extent that it is supported by evidence in the record."); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *Brand v. Murawski*, 2021 WL 1222800, at *2 (N.D. Ill. 2021) (accepting defendants' "'uncontroverted version of the facts to the extent that it is supported by evidence in the record'") (quoting *Keeton*, 667 F.3d at 880)). That outcome stems directly from the text of the Local Rules: "[a]sserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* Local Rule 56.1(e)(3).

So the question is whether Defendant is entitled to summary judgment based on the undisputed material facts.

I. **Section 1981 and Federal Agencies**

As an initial matter, Defendant argues that section 1981 does not apply to Washington's discrimination claim because he is suing a federal agency. *See* Def.'s Mem. in Supp. of Summ. J., at 11 (Dckt. No. 89). Recall that the jurisdictional paragraph of the complaint invoked section 1981, without more. *See* Fourth Am. Cplt., at 1 (Dckt. No. 63).

Violations of section 1981 are actionable only against *state* actors, not federal actors. *See Davis v. United States Dep't of Justice*, 204 F.3d 723, 725 (7th Cir. 2000) ("[B]y its language, § 1981 does not apply to actions taken under color of federal law."); *see also* 42 U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."). The VA is a federal agency, not a state agency. So Plaintiff cannot recover against his employer under section 1981.

6

The Court grants summary judgment to Defendant on any claim to the extent that it purports to arise under section 1981.

## II. Disparate Treatment and Retaliation Claims under Title VII and the Rehabilitation Act

Next, Defendant argues that any disparate treatment claim or retaliation claim under Title VII or the Rehabilitation Act fails as a matter of law. Plaintiff did not expressly allege disparate treatment in his complaint, but the Court addresses that possibility for the sake of completeness. According to Defendant, each claim requires proof of an adverse employment action, and Washington has failed to come forward with evidence that he suffered an adverse action. *See* Def.'s Mem. in Supp. of Mtn. for Summ. J., at 7–9 (Dckt. No. 89).

The Court agrees. A disparate treatment claim under Title VII or the Rehabilitation Act requires proof of an adverse employment action, among other things. *See Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018); *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). For a retaliation claim under either statute, a plaintiff must prove that "he suffered a materially adverse employment action." *See Williams v. Bd. of Educ. of the City of Chicago*, 982 F.3d 495, 508–09 (7th Cir. 2020) (quoting *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 472 (7th Cir. 2018)); *see also Kurowski v. Shinseki*, 557 F. App'x. 549, 553 (7th Cir. 2014).

Not every run-of-the-mill work-related inconvenience or frustration rises to the level of an adverse employment action. An adverse employment action "must materially alter the terms or conditions of employment to be actionable under the antidiscrimination provision of Title VII." *See Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)); *see also Latham v. Donahue*, 40 F. Supp. 3d 1023, 1028 (N.D. Ill. 2014) (incorporating language from Title VII cases that define the scope of "adverse employment actions" when assessing a claim under the Rehabilitation Act). The action

7

"must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Porter*, 700 F.3d at 954 (quoting *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009)). A "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)).

Washington has provided no evidence of an adverse employment action. In fact, in response to the motion for summary judgment, Washington came forward with nothing at all. Summary judgment is the "put up or shut up" time of the case. *See Steen*, 486 F.3d at 1022 (quoting *Hammel,* 407 F.3d at 859). And in response, Washington stood silent.

Even if Washington had come forward with evidence to support the allegations in his complaint, it would not have made a difference. Washington's complaint included allegations about the denial of a request for time off, harassment about a meeting, and changes to his work schedule. *See* Fourth Am. Cplt., at 2–3 (Dckt. No. 63). None of those actions satisfies the standard for an adverse employment action. These actions are not "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Porter*, 700 F.3d at 954.

Washington did not suffer an adverse employment action when the VA denied his request for time off to talk with an EEO investigator in July 2014. Defendant presented (undisputed) evidence that Washington could not take time off as requested because of a mandatory training session for all employees on that day. *See* Def.'s Corrected Statement of Facts, at ¶ 6 (Dckt. No. 96). The denial was not specific to Washington and was not related to his desire to participate in an EEO investigation. *Compare id. with* Fourth Am. Cplt., at 2 (Dckt. No. 63). And a denial of

preferred time off is not an adverse employment action. *See, e.g.*, *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (holding that "refus[ing] to approve annual leave requests when work was backlogged" was not an adverse employment action); *Mahran v. Advocate Health and Hosps. Corp.*, 2019 WL 952131, at *10 (N.D. Ill. 2019) (observing that "the refusal to honor an employee's preferred vacation schedule amounts to merely an inconvenience and does not materially alter the terms and conditions of the employee's job").

His manager's repeated requests for a meeting on August 14, 2014 were not a material adverse action, either. Recall that Washington claimed that Stroder harassed him about having a meeting, even though he requested sick leave for that day. *See* Fourth Am. Cplt., at 2 (Dckt. No. 63). Washington did not present any evidence of any tangible job consequence from Stroder's "harassment" about the need for a meeting. In fact, the record is devoid of any evidence that the meeting – or any discussion about the meeting – took place at all. *See, e.g.*, Def.'s Corrected Statement of Facts, at ¶ 11 (Dckt. No. 96) ("During the administrative EEO process, Jane Stroder, a director at Hines over Washington, stated that she had no documentation of any conversation with Washington about having to come into the office of [sic] a meeting on August 14, 2014 . . . ."). If anything, the complaint (which is not evidence for the non-moving party) suggests that the VA accommodated his request, and rescheduled the meeting for September 2014. *See* Fourth Am. Cplt., at 2.

Washington offered no evidence that the VA took action against him because of the meeting. Even if the VA gave him a hard time about the need for a meeting, that action is not enough to support a claim. Employers can request meetings with their employees. Persistent requests for a meeting are not an adverse employment action, even if delivered in a tone that the employee considers harassing. Even "unfair reprimands or negative performance evaluations,

unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001).

The supposed changes to Washington's work schedule and accommodation in September and October 2014 did not rise to the level of an adverse employment action, either. *See* Fourth Am. Cplt., at 3 (Dckt. No. 63). Defendant offered evidence of several damaging admissions. Washington admitted during his EEO investigation that his work schedule did not actually change in September 2014. *See* Def.'s Corrected Statement of Facts, at ¶ 12 (Dckt. No. 96). He also admitted that management did not actually change his accommodation (whatever it was) in October 2014. *Id.* at ¶ 13. He was merely confused that he had to respond to emails asking him to confirm which days he wanted to come into work. *Id.*

After an investigation into Washington's complaints, the VA's Office of Employment Discrimination concluded that Washington had not presented any evidence that his schedule or his telework accommodation had been changed. *Id.* at ¶ 16. In response to the motion for summary judgment, Washington once again has failed to come forward with any evidence of any change to his schedule or telework accommodation. Washington also made no showing of any material consequences from any such change, either. *See Porter*, 700 F.3d at 955 ("Porter fails, however, to put forth evidence that either of these actions materially altered the terms or conditions of her employment. Absent such evidence, these actions are indistinguishable from the schedule changes and reprimands without material consequences that we have held generally do not constitute adverse employment actions.") (discussing whether a schedule change took advantage of a "known vulnerability").

Washington has not come forward with evidence that he suffered an adverse employment action. The Court therefore grants Defendant's motion for summary judgment on the disparate treatment and retaliation claims under Title VII and the Rehabilitation Act.

### III. Hostile Work Environment Claims under Title VII and the Rehabilitation Act

Defendant argues that Washington's hostile work environment claims fail because he has no evidence of any severe or pervasive harassment. *See* Def.'s Mem. in Supp. of Mtn. for Summ. J., at 10–11 (Dckt. No. 89).

"To survive summary judgment on a hostile work environment claim, a plaintiff must prove four elements: '(1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [race or disability] was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability.'" *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir. 2017) (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016)); *see Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019) ("The same standard governs hostile work environment claims under the ADA as under other employment discrimination laws.").[4]

The harassment must be "sufficiently severe or pervasive to alter the conditions of employment." *See Milligan-Grimstad*, 877 F.3d at 714 (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)). "Whether conduct meets this bar depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or

---

[4] The Court notes that the Seventh Circuit has only recently held that hostile work environment claims under the ADA are cognizable. *See Ford*, 942 F.3d at 851 ("As a threshold matter, we hold that hostile work environment claims are cognizable under the ADA."). This Court assumes for the sake of argument that this holding allows for hostile work environment claims under the Rehabilitation Act, too. *Cf. Yochim v. Carson*, 935 F.3d 586, 593 (7th Cir. 2019) ("This Court has not determined whether the ADA (and by extension, the Rehabilitation Act) encompasses claims of a hostile work environment.").

11

humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Scruggs*, 587 F.3d at 840).

Washington did not come forward with evidence of *any* conduct, let alone evidence of severe or pervasive harassment. He did not show any offensive words, humiliation, or physically threatening conduct, let alone that any conduct of the sort was frequent. The record is bare of any evidence that the VA altered the conditions of his employment.

The non-moving party's complaint is not evidence, but even if Washington had supported his allegations with evidence, his claim would not survive. Washington alleged only that his manager – "Ms. Stroder" – "harassed him regarding a meeting" and "was constantly nagging him week after week." *See* Fourth Am. Cplt., at 2 (Dckt. No. 63). He also alleged that "management harassed him over his reasonable accommodation" because they required him to come into the office on certain days. *Id.* at 3; *see also id.* ("Ms. Stroder does not want to acknowledge the fact that his reasonable accommodation that is presently in place were [sic] accepted working condition changes."). Nagging an employee about attending a meeting or coming into work is not objectively offensive. *See Abrego v. Wilkie*, 907 F.3d 1004, 1016 (7th Cir. 2018) (holding that plaintiff's allegations that his supervisors "were 'short tempered,' 'hostile,' unfairly critical, and disrespectful," and that he was "subjected to excessive monitoring," did not amount to "objectively offensive, severe, or pervasive" conditions).

"Vague and conclusory allegations about hostile conditions, without specific support in the record, do not allow a plaintiff to survive summary judgment." *Mahran v. Advocate Health and Hosps. Corp.*, 2019 WL 952131, at *8 (N.D. Ill. 2019). Here, Washington has come forward with no evidence to support the allegations in his complaint. And even if he had, the

12

case is not about objectively offensive conduct and thus cannot support a hostile work environment claim.

Washington's hostile work environment claims fail as a matter of law. The Court grants Defendant's motion for summary judgment on Washington's hostile work environment claims under Title VII and the Rehabilitation Act.

### IV. Failure to Accommodate Claim under the Rehabilitation Act

The Court next considers Washington's disability discrimination claim under the Rehabilitation Act. Two categories of disability discrimination claims under the Rehabilitation Act could apply here: (1) failure to accommodate, and (2) disparate treatment. *See Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). The Court addressed any claim for disparate treatment above, as well as a hostile work environment claim to the extent that such claim exists. So the Court turns to a failure to accommodate claim.

A failure to accommodate claim under the Rehabilitation Act generally requires proof that "(1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Id.*

Washington's failure to accommodate claim appears to rest on his allegations that management changed his schedule. *See* Fourth Am. Cplt., at 2 (Dckt. No. 63) ("On September 14, 2014, management harassed the complainant by altering his telework and compressed work schedule and refusing to acknowledge a previous ad hoc change allowed by management . . . ."); *see also id.* at 3 ("On October 14, 2014, management harassed him over his reasonable accommodation, refusing to acknowledge a previous ad hoc change allowed by management . . . .").

But once again, Washington comes forward with no evidence. He did not make a showing that his schedule actually changed. Defendant, however, did come forward with evidence, and it shows that Washington has no claim. Washington admitted to an EEO investigator that his schedule was not changed on September 14, 2014. *See* Def.'s Corrected Statement of Facts, at ¶ 12 (Dckt. No. 96). He also admitted that his accommodation was not altered on October 14, 2014, either. *Id.* at ¶ 13. He was merely "confused by having to respond to emails from management asking him to clarify which days he wanted to come into work." *Id.*

The Court does not understand Washington to be alleging that the accommodation that was in place before the fall of 2014 was an inadequate accommodation. And he has presented no evidence that the accommodation was changed in September or October 2014. *See* Fourth Am. Cplt., at 3 (Dckt. No. 63). Therefore, because the undisputed evidence shows that his schedule did not change, Washington has not offered evidence to prove an essential element of his disability discrimination claim. The Court grants summary judgment to Defendant on the failure to accommodate claim under the Rehabilitation Act.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is hereby granted on all claims.

Date: May 17, 2021

Steven C. Seeger
United States District Judge

14